IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KATHIE CUTRER, § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | NO. 4:18-cv-00159-O | |
| § | | |
| TARRANT COUNTY LOCAL § | | |
| WORKFORCE DEVELOPMENT § | | |
| BOARD d/b/a TARRANT COUNTY § | | |
| WORKFORCE SOLUTIONS, AND § | | |
| INSPERITY INC., § | Hon. Reed O'Connor | |
| § | | |
| § | | |
| *Defendants.* § | | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO MODIFY SCHEDULING ORDER (DOCKET 70)**

COMES NOW Kathie Cutrer, Plaintiff in the above-styled and captioned matter, and files this *Response to Defendant's Opposed Motion to Modify Scheduling Order*.

Respectfully submitted,

By: _____
Joshua Graham Trial Lawyers
6924 Glenview Dr.
North Richland Hills, Texas 76180
Tel: (817) 789-4000
Fax: (817) 789-4001

Joshua Stewart Graham
SBN: 24080736
jsg@joshuagraham.com

Table of Contents

**TABLE OF AUTHORITIES** ........................................................................................................3

**FACTS** ...........................................................................................................................................4

**ARGUMENT** ................................................................................................................................8

    **(A)** D<small>EFENDANT'S</small> *M<small>OTION</small>* <small>FAILS TO ESTABLISH THE LEGAL PREREQUISITES TO DEPOSE</small> P<small>LAINTIFF'S</small> C<small>OUNSEL</small>. ....................................................................................................................8

        *1.   Other means exist to obtain the information requested by Defendant.* ......................9

        *2.   The information sought by Defendant is privileged.* ....................................................12

        *3.   The information sought by Defendant is not crucial to the preparation of the case.* 16

    **(B)** P<small>LAINTIFF'S</small> C<small>OUNSEL ANSWERED THE</small> R<small>EQUESTS FOR</small> A<small>DMISSIONS BASED ON WHAT</small> D<small>EFENDANT PRESENTED</small>. ..................................................................................................17

**CONCLUSION** ..........................................................................................................................18

**CERTIFICATE OF SERVICE** ................................................................................................20

# TABLE OF AUTHORITIES

<u>CASES</u>

*Chandler v. Phoenix Services*, 2020 WL 487503 (Jan. 30, 2020) ................................ 7

*Chandler v. Phx. Servs.*, 419 F. Supp. 3d 972 (N.D. Tex. 2019)................................... 7

*Chandler v. Phx. Servs.*, Civil Action No. 7:19-cv-00014-O, 2020 U.S. Dist. LEXIS 15702 (N.D. Tex. Jan. 30, 2020). ....................................................................... 8, 12

*In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982) .... 12

*Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1008 (5th Cir. 1992) ................................................................................... 12

*Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999). .......................................... 8

*Theriot v. Parrish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) ............................ 12

## FACTS

1. Plaintiff was retroactively fired by Tarrant County Workforce Solutions (April 13, 2020) after she withdrew her consent to settle her discrimination claims against Workforce Solutions (April 15, 2020) because, in part, Workforce Solutions unilaterally established new conditions that were not in the settlement agreement and told Plaintiff that it would not pay her as agreed unless the conditions were met. *See* Appendix Tab 1.

2. Upon learning that Defendant had retroactively fired Plaintiff, Defendant's Counsel, John Ross, attempted to reframe Plaintiff's termination by stating that Plaintiff's employment had been "contractually terminated" in an apparent attempt to justify Defendant's written termination for "performance" reasons. *See* Appendix Tab 2.

3. Plaintiff suffers from a neurological disorder.

4. On or about July 15, 2020, Plaintiff had surgery. Plaintiff's physician prescribed her narcotics for pain, which have inhibited her ability to assist her attorneys in the litigation process.

5. Plaintiff has a high risk of severe illness or death if she contracts COVID-19, which statistically she has a high probability of contracting.

6. On or about March 31, 2020, Defendant's counsel agreed to an informal stay until the end of April 2020, and to confer afterward to reassess the situation.

7. Neither Defendant nor Plaintiff's counsel conferred to reassess the situation. Instead, on June 26, 2020, Defendant unilaterally restarted the litigation

by filing a *Motion for Summary Judgment* based on admissions that Plaintiff did not respond to, with the understanding that the case was still stayed.

8.  On July 31, 2020, Plaintiff filed an *Amended Request to Strike Deemed Admission* (Docket 47). Plaintiff attached to the *Request* admissions responses that Plaintiff's Counsel had diligently attempted to obtain from Plaintiff except that Plaintiff was unable to adequately assist her attorney in providing answers, which prompted her attorney to decline certifying the answers.

9.  The discovery deadline in this matter closed on August 7, 2020.

10. On August 14, 2020, the parties appeared before this Court to argue and answer questions on all outstanding issues before the court including Plaintiff's *Request to Strike Deemed Admissions* (Docket 47) and Plaintiff's *Motion to Stay and in the Alternative Modify Scheduling Order* (Docket 54).

11. This Court heard Plaintiff's explanation that Plaintiff suffered from several mental and medical ailments, including one that caused her to take prescription narcotics. The Court learned that Plaintiff was recovering from surgery. The Court learned that despite Plaintiff's Counsel's best efforts to communicate with Plaintiff, Plaintiff was unable to adequately assist her attorney or swear under oath that she was competent to give answers.

12. This Court, after hearing the arguments and explanations of counsel, ordered the Deemed Admissions withdrawn and deferred its ruling on all issues regarding the scheduling order and reopening discovery, including Plaintiff's *Motion to Stay and in the Alternative Motion to Modify Scheduling Order*. (Docket 54). This

Court ordered Plaintiff to respond to Defendant's *Request for Admissions*. (Docket 60). Plaintiff's counsel responded without Plaintiff's assistance.

13. At the August 14, 2020 hearing, this Court ordered Plaintiff's Counsel to respond to the primary issues regarding exhausting administrative remedies because those issues are dispositive; and presumably did not require Plaintiff's assistance in answering.

14. As explained in the August 14, 2020 hearing, Plaintiff's counsel made a calculated decision to close the law firm's downtown office in an attempt to continue operations and save the jobs of the Firm's employees during a statewide shutdown caused by the COVID-19 epidemic.

15. Since the time that Plaintiff has responded to Defendant's *Request for Admissions*, Defendant repeatedly requested certifications of Defendant's interrogatory and production responses despite Defendant knowing that Plaintiff was unable to provide the certifications while on narcotic medications. At times, Defendant's Counsel copied and pasted the same content and sent it to Plaintiff's Counsel numerous times in the same day. Plaintiff's Counsel responded to document production requests despite Defendant's inability to certify the responses. Plaintiff's ability and desire to complete discovery was part of the *Motion* that this Court deferred its August 14, 2020 ruling on.

16. On or about August 24, 2020, Plaintiff's Counsel found record of meetings from years past, including notes regarding an October 20, 2017 meeting with Plaintiff Kathie Cutrer. Plaintiff's Counsel provided a statement via *Affidavit*

that did not embellish in any way and revealed only the facts that could be gleaned as follows: (1) Counsel met with Ms. Cutrer; (2) the purpose of the meeting was to review the EEOC's Charge; (3) The form was completed; and (4) the form was mailed. In Plaintiff's *Reply* to Defendant's *Motion for Summary Judgment*, she was candid about only having a copy of the form before it was filled out and not being able to locate a copy of the document that was mailed.

17. Upon receiving Plaintiff's *Reply to Defendant's Motion for Summary Judgment*, Defendant's counsel emailed Plaintiff's counsel regarding his stated intentions: "(1) the motion to disqualify you as counsel; and (2) disbarment . . ." *See* Appendix Tab 3.

18. In Defendant's *Response* to Plaintiff's *Reply to Defendant's Motion for Summary Judgment*, Defendant called Plaintiff's Counsel's *Affidavit* a "sham" because it was not supported by evidence except Counsel's sworn statement.

19. On or about September 5, 2020, Defendant served Plaintiff with a Notice of Intent to Depose Plaintiff *Duces Tecum*. *See* Appendix Tab 4.

20. On or about September 8, 2020, Plaintiff moved to quash Plaintiff's deposition notice to the extent that it required Plaintiff to appear in person.

21. Defendant seeks to modify the scheduling order to depose Plaintiff's Counsel alleging that Counsel has engaged in "apparent deception."

# ARGUMENT

Defendant seeks to disqualify Plaintiff's Counsel, depose Plaintiff's Counsel, and disbar Plaintiff's Counsel. Defendant supports its *Motion* with only its argument about absence of records and Plaintiff's admission responses. This *Brief* will discuss (A) the legal standard required to depose Plaintiff's Counsel; and (B) the purported contradictions in Plaintiff's Admission Responses.

### (A) Defendant's *Motion* fails to establish the legal prerequisites to depose Plaintiff's Counsel.

Defendant cites to *Chandler v. Phoenix Services*, 2020 WL 487503 (Jan. 30, 2020) to support its request that it be allowed to depose Plaintiff's Counsel. But *Chandler* does not apply here.

*Chandler* was a case involving a patent dispute before the Federal Circuit court that was at the heart of an antitrust lawsuit in the Northern District of Texas. *Chandler v. Phx. Servs.*, 419 F. Supp. 3d 972 (N.D. Tex. 2019). The Federal Circuit held that one of the parties asserted a patent in bad faith and that the patent was unenforceable for "inequitable conduct." The *Chandler* plaintiffs in the Northern District case alleged patent fraud and sham patent litigation, thus waiving defendant's privilege to the extent that there was already a finding by the Federal Circuit court that the defendants engaged in inequitable conduct. *Chandler v. Phx. Servs.*, Civil Action No. 7:19-cv-00014-O, 2020 U.S. Dist. LEXIS 15702 (N.D. Tex. Jan. 30, 2020). Defendant's attorneys were necessarily involved in what the Federal Circuit court found was sham patent litigation.

To depose an opposing attorney, the movant must prove three elements (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case. *Nguyen v. Excel Corp.,* 197 F.3d 200, 208 (5th Cir. 1999). All three elements must be proven.

### 1. Other means exist to obtain the information requested by Defendant.

Defendant seeks to depose Plaintiff's Counsel regarding the "signing and mailing of the Draft Charge." Deposing Plaintiff's Counsel will not reveal any information that is not included in this *Response* because Plaintiff's Counsel's information is entirely based on privileged notes of a meeting that occurred nearly three years ago. Defendant has scheduled and noticed Plaintiff of its intent to depose her on September 28, 2020. The supposition in Defendant's *Motion* is that Plaintiff has not yet been deposed. Defendant argues that its questions can *only* be answered by Plaintiff's Counsel. But many of the questions that Defendant poses in its *Motion* are unknown to Plaintiff's Counsel. And what is known to Plaintiff's Counsel could have been readily obtained by Defendant if its counsel politely requested it and did not constantly threaten to sanction or disbar Plaintiff's Counsel. Defendant's Counsel's behavior in this case has been quite untenable, and unbecoming of a gentleman practicing in federal court. Defendant's questions, as posed on Page 9 of its *Motion*, are enumerated with answers as follows:

**Question**: What, if anything, allegedly happened to the Draft Charge after it was supposedly signed?

**Answer**:   The Charge was handed off to a legal assistant or paralegal for mailing.

**Question**:   Why he has not been able to provide a copy of the supposedly signed document?

**Answer**:   Plaintiff's Counsel does not have a copy.  Presumably either the legal assistant did not image the document, or the document was imaged but not stored correctly to Plaintiff's electronic file.  Plaintiff's Counsel would be guessing as to which statement is true.

**Question**:   Why the *original* unsigned yellow-highlighted copy receive from the EEOC remains in his file?

**Answer**:   Defendant believes that there is an original EEOC charge in Plaintiff's file because the unsigned EEOC charge provided in discovery has yellow highlights at the bottom.  What Defendant believes is the original copy of the charge is only a scanned image of the document when it was received from the EEOC.  The discrepancy between documents without the yellow highlights is whether the document was printed in color or black and white.  If the print-to-PDF function is set to black and white when a certain discovery response is created, the document will appear without color.

**Question:**   Why he is unable to produce a cover letter for allegedly having returned a verified charge to the EEOC.

**Answer:**  Plaintiff's Counsel did not personally mail the charge.  It was tasked to a legal assistant who likely drafted a cover letter and should have imaged it

with the Charge before mailing. Whether that happened is unbeknownst to Plaintiff's Counsel.

**Question:** What, if any, documentary evidence does he possess to corroborate his naked claim of mailing?

**Answer:** Plaintiff's Counsel relied on privileged meeting notes taken by Counsel regarding an October 2017 meeting with Plaintiff.

**Question**: What billing records does he have regarding the alleged client meeting?

**Answer:** Ms. Cutrer is not billed by the hour and does not receive hourly statements as might occur in a situation where an attorney bills against a retainer. But the notes from the meeting were taken down on the calendar schedule for the meeting and kept in a binder with notes from other meetings and consultations.

**Question:** Why did he represent to the Court and the Defendant just one week before the discovery deadline that he had "diligently obtained" responses to Requests for Admission Nos. 22-24 and admitted Plaintiff had not signed the Draft Charge which still remained unperfected?

**Answer:** Please see Plaintiff's explanation in Section B of this Brief.

**Question:** Why did he wait until three weeks after the discovery deadline to disclose the alleged facts in his affidavit instead of answering Interrogatory No. 22, et., etc., etc.?

**Answer:** Plaintiff's Counsel did not know about the October 2017 meeting notes until August 24, 2020. *See* Appendix Tab 5.

Plaintiff is not trying to fight the facts. (1) An EEOC letter was received; (2) the letter stated that the document previously received constituted a charge; (3) the letter stated that the EEOC may issue a right-to-sue letter if it did not hear from Plaintiff within 30 days; (4) Plaintiff met with her attorney, who took notes of the meeting; (5) Plaintiff singed the EEOC charge and it was mailed; (6) Plaintiff's signed charge was not in the EEOC's file obtained by Defendant; (7) the individual responsible for mailing the Charge presumably did not image it before mailing it; and (8) no other information exists that Plaintiff's Counsel is aware of regarding the Charge.

Defendant's Counsel could have merely had a conversation with Plaintiff's Counsel. It is unlikely that the attorneys have had a single telephone conversation since this suit was filed. Despite multiple requests to conference, Defendant's Counsel has refused. Not one telephone call to Defendant's Counsel has been returned. Yet Defendant complains about its inability to obtain information. Defendant had options to obtain information from Plaintiff but chose not to exercise those options. See Appendix Tab 6.

**2.     The information sought by Defendant is privileged.**

To overcome attorney-client privilege, a party must prove that communication or work product is intended to further continuing or further criminal or fraudulent activity. *Id* at 6. "To invoke the crime-fraud exception, a party must establish a

*prima facie* case that a crime has been committed." *Chandler* citing *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.,* 953 F.2d 1004, 1008 (5th Cir. 1992). To make out a *prima facie* case, the movant "must produce evidence such as will suffice until contradicted and overcome by other evidence . . . a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded." *Chandler* citing *In re Grand Jury Subpoena*, 419 F.3d at 336 (quoting *In re Int'l Sys. & Controls Corp. Sec. Litig.,* 693 F.2d 1235, 1242 (5th Cir. 1982).

Only after a *prima facie* case is made regarding privilege exceptions can the court entertain the possibility of deposing an opposing counsel because such practice is disfavored by federal courts. *Theriot v. Parrish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999); *see also Chandler* at 7.

The Texas Disciplinary Rules of Professional Conduct Rule 4.04 prohibits a lawyer from presenting, participating in presenting, or threatening to present disciplinary charges solely to gain an advantage in a civil matter.

Here, Defendant's Counsel has repeatedly threatened Plaintiff's Counsel with sanctions and disbarment. In the entire course of this Case, Defendant's Counsel has yet to return one telephone call to Plaintiff's Counsel. Despite multiple requests to conference in person or over the telephone, Defendant's Counsel has refused. Defendant's *Motion*, and much of this litigation, has been driven by animus. This animus is evident in Defendant's sideways anger as exhibited in its sarcasm and

excessive use of exclamation points. Defendant has an agenda—retribution for it losing 11th Amendment Immunity.

Defendant stated that this Court "need look no further" than *Chandler* for a concise summary of the law regarding Defendant's *Motion*. Docket 70 at 8. Plaintiff agrees. Defendant failed to make a *prima facie* case that the crime-fraud exception, or any other exception applies. Defendant did not provide any evidence that will suffice until contradicted and overcome by other evidence.

Unlike the defendants in *Chandler*, there has been no allegation of a crime or fraudulent activity. Defendant alludes to "apparent deception" in its *Memorandum* heading but failed to further expound on any specific allegation supported by evidence. It is clear that Defendant intends to use the deposition proceeding to attempt to develop evidence that could be used in its threatened disciplinary proceedings or to make a case that the crime-fraud exception applies, but that is not how the process works.

In *Chandler*, the Federal Circuit court had already made a full inquiry into what it described as "inequitable conduct" and issued a finding that was then used in a completely separate antitrust case before the Northern District of Texas to support disqualifying the counsel that engaged in the conduct found in the Federal Circuit case.

Here, there has been no inquiry and no finding that Plaintiff or her Counsel engaged in any conduct that would give rise to any exception found in *Chandler*.

Defendant seeks to depose Plaintiff's Counsel about a privileged meeting and the notes from that privileged meeting, which occurred nearly three years ago.

Unlike the *Chandler* defendants, which engaged counsel to willfully perpetrate sham patent litigation over a long period of time, Plaintiff's counsel took notes in a privileged meeting.

Unlike the *Chandler* defendants, which orchestrated extensive antitrust practices, Plaintiff was unlawfully discriminated against because of her disability and then retaliated against after she refused a payoff.

Unlike the *Chandler* plaintiffs, which presumably had clean hands, Defendant has actually deceived this Court, attempted to deceive the Court of Appeals, and outright rebelled against this Court's jurisdiction.

Like the *Chandler* attorneys, who assisted their clients in engaging in "inequitable conduct," Defendant's attorneys assisted their client in engaging in inequitable conduct when they assisted Defendant in justifying Defendant's retroactive firing of Ms. Cutrer by making statements about the firing that were arguably untrue. But not once has Plaintiff's counsel threatened to use disciplinary proceedings against Defendant's attorneys. Defendant's Counsel has made his motives clear: he seeks to leverage the threat of disbarment in this litigation and use it to gain an advantage.

Plaintiff's Counsel is not without flaws, but is willing to consider opposing views. For example, Defendant's Counsel made a compelling argument that Plaintiff's original FCRA claim should be dismissed. After contemplation and

weighing the legal considerations, Plaintiff conceded to only move forward on her discrimination claims. The same is true when mistakes are made. Mistakes happen, and when confronted by a mistake, Plaintiff's Counsel has reviewed the mistake in question and made it right. *See* Appendix Tab 5.

Defendant has not met its burden to invoke any privilege exception.

### 3. The information sought by Defendant is not crucial to the preparation of the case.

Defendant has elevated the EEOC charge to a level that is not supported by law. The EEOC stated clearly that the document it received in the instant case constituted a charged. *See* Appendix Tab 7. Defendant's conclusion that Plaintiff's Counsel's Affidavit is a "sham" is based on the supposition that Plaintiff held more information or explanation than was provided to the court. Plaintiff's Counsel does not. Plaintiff's Counsel's Affidavit was not presented as dispositive, nor should it be considered dispositive because the EEOC itself ratified the complaint forwarded by the Texas Workforce Commission as a valid charge—just not in the EEOC's own form, which is not required by statute.

Defendant contends that "until receipt of the sham affidavit of Plaintiff's counsel [Defendant] had no reason to question the self-evident facts from the EEOC file that Plaintiff had failed to file a sworn charge with the EEOC." Docket 70 at 7. But Defendant did have a reason to question whether a sworn charge was filed with the EEOC because the EEOC instructed Ms. Cutrer that (1) the document it received from the Texas Workforce Commission was a charge; and (2) that if the EEOC did not receive its own form back, it could issue a right-to-sue letter, which it did.

There is no information that Defendant needs from Plaintiff's Counsel to prepare its case other than the information already provided by Plaintiff because whether administrative remedies were exhausted is a question of law for the judge, not a jury. And the court has sufficient information about the issues to make that determination.

### (B) Plaintiff's Counsel answered the Requests for Admissions based on what Defendant presented.

The term "perfected charge" is nowhere to be found in statute, nor is it found in any document or communication from the Texas Workforce Commission or the EEOC to Ms. Cutrer or her counsel. The EEOC logs presented to this Court were obtained by Defendants via a Freedom of Information Act Request. Plaintiff had no knowledge of the logs before this lawsuit. Nor was Plaintiff privy to any actual communications between the EEOC and Defendant. What Plaintiff had was a letter from the EEOC stating that what she filed with the Texas Workforce Commission constituted a charge. *See* Appendix Tab 7.

Defendant has effectively attached to its various requests for admission two narrowing criteria (1) a definition of the words "Perfected Charge" that does not synthesize case law, EEOC regulations, or the words that the EEOC used in its correspondence to Ms. Cutrer; and (2) a copy of an unsigned "Draft Charge" as defined by Defendant. The questions asked by Defendant were narrowly tailored to suit its self-serving definition of a "Perfected Charge." Plaintiff answered the questions within the parameters provided by Defendant.

For example, without considering a rule-synthesized definition of what a "Perfected Charge" means, and *only* relying on Defendant's self-serving definition, Plaintiff had to answer "Admit" to Request No. 21 because the "Draft Charge" provided by Defendant did not comport to *Defendant's* self-serving definition of "Perfected Charge."

Likewise, in Request No. 22, Plaintiff admitted that she never signed the "Draft Charge" as provided by Defendant because looking at Defendant's exhibit, it was clear that it was not signed.

In Requests Nos. 23 and 24, Plaintiff again answers the question based on Defendant's self-serving definition of "Perfected Charge," which was not rule-synthesized to consider case law, the EEOC's regulations, or the written statements made to the Ms. Cutrer and her counsel.

There is no contradiction between Plaintiff's Admissions and Plaintiff's Counsel's affidavit because Plaintiff's Counsel answered the questions as presented.

## CONCLUSION

Defendant assumes that just because it resorts to a win-at-all-costs approach that so does everyone else. Not so with Plaintiff or her counsel. Defendant assumes that everyone will exercise the type of dishonesty that it exercised before this Court. Defendant deceived this Court into granting its *Motion to Dismiss* based on case law that Defendant failed to inform this Court was overturned. It was Defendant that refused to exercise candor with this Court and the Court of Appeals prompting the Court of Appeals to issue a letter ordering Defendant to answer its questions, only to

be rebuffed. Defendant's perception of the circumstances regarding Plaintiff Counsel's Affidavit are framed through the lens of the type of underhanded approach Defendant would take—and has already taken. Afterall, Defendant still asserts to this Court that it is not subject to its jurisdiction and is still entitled to immunity.

Plaintiff has tried to cooperate with Defendant, including answering Defendant's questions directly in this *Brief*. Defendant's motives in deposing Plaintiff's counsel, if they are what Defendant represent them to be, should be satisfied by the explanations provided in this *Brief*. But Defendant has not met its burden as outlined in *Chandler*.

For the foregoing reasons, Plaintiff requests that this Court **deny** Defendant's *Opposed Motion to Modify Scheduling Order*.

Respectfully submitted,

By:

*[signature: Joshua Graham]*

Joshua Graham Trial Lawyers
6924 Glenview Dr.
North Richland Hills, Texas 76180
Tel: (817) 789-4000
Fax: (817) 789-4001

Joshua Stewart Graham
SBN: 24080736
jsg@joshuagraham.com
***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on or about September 9, 2020, I electronically submitted the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas using the electronic case fling system of the Court. I certify that I have served all counsel of record by the Court's electronic filing system or U.S. Mail.

_____
Joshua Stewart Graham