UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KATHIE CUTRER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:18-cv-00159-O |
| TARRANT COUNTY WORKFORCE | § | |
| DEVELOPMENT BOARD d/b/a | § | |
| WORKFORCE SOLUTIONS,[1] | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Workforce Solutions's Motion for Summary Judgment, Brief, and Appendix (ECF Nos. 37-39), filed June 26, 2020; Plaintiff Kathie Cutrer's Response, Brief, and Appendix (ECF Nos. 63-65), filed August 28, 2020; Defendant's Reply and Supplemental Appendix (ECF Nos. 67-68), filed September 2, 2020; and Plaintiff's Sur-Reply (ECF No. 76-1), filed September 8, 2020. Having considered the motion, briefing, appendices, record, and applicable law, the Court finds that Defendant's Motion should be and is hereby **GRANTED in part** and **DENIED in part**.

I.    **FACTUAL BACKGROUND**

This is an employment discrimination lawsuit. Plaintiff Kathie Cutrer ("Cutrer" or "Plaintiff") alleges her former employer, Tarrant County Workforce Development Board d/b/a Workforce Solutions ("Workforce Solutions" or "Defendant"), denied her reasonable accommodations and retaliated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*, and the Fair Credit Reporting Act ("FCRA"). This case was

---

[1] Insperity PEO Services, L.P. is no longer a defendant to the suit. *See* Order, ECF No. 22.

remanded from the Fifth Circuit for further proceedings after a determination that sovereign immunity did not apply to Defendant. *See Cutrer v. Tarrant Cty. Local Workforce Dev. Bd.*, 943 F.3d 265, 272 (5th Cir. 2019). Following remand, the Court dismissed Cutrer's FCRA cause of action for failure to state a claim.[2] Order, ECF No. 34. At this stage, the relevant underlying facts are largely undisputed.[3] Where the facts are in dispute, the Court views them in the light most favorable to Cutrer, the non-moving party.

In May 2000, Cutrer began working for Workforce Solutions, an entity coordinating training and grants for local employers and job seekers. Def.'s App. 129 (Ex. 48). Three months later, Cutrer was involved in a vehicle collision and suffered injuries including a broken neck requiring multiple surgeries and a double spinal fusion. Beginning August 2016, Workforce Solutions reassigned Cutrer to the IT Department under the supervision of Kristi Davis ("Davis"). Def.'s App. 5-6 (Ex. 2), 129-30 (Ex. 48), 133-34 (Ex. 49).

On October 11, 2016, Cutrer's neurologist Dr. Grey Ward ("Dr. Ward") faxed to Defendant a work release ("First Work Release"), stating that Cutrer had begun seeing Dr. Ward on October 6, 2016, and that Cutrer would not be able to work until after a re-examination on November 29, 2016. *Id.* at 32-33 (Ex. 5). Dr. Ward recommended a limited eight-hour workday, including various physical accommodations when Cutrer returned to work. *Id.* She would not be able to kneel, squat, bend, stoop, push, pull, sit or stand for prolonged periods, move her neck to extreme positions, or lift in excess of ten pounds. *Id.* The First Work Release gave no medical reason for the physical limitations, leaving both the "Message" and "Comment" sections of the report empty. *Id.*

---

[2] The Court granted Cutrer the opportunity to re-plead her FCRA claim, but she declined to do so. *See* Order, ECF No. 31.

[3] Some undisputed facts are drawn from the Fifth Circuit's opinion. *See Cutrer*, 943 F.3d at 265–72.

Ten days later, Davis and Workforce Solutions Manager Tracey Cummings ("Cummings") met with Cutrer to discuss work modifications to accommodate Cutrer's physical restrictions. *Id.* at 34-36 (Ex. 6), 37 (Ex. 7), 136-37 (Ex. 49), 143-44 (Ex. 50). During that meeting, Davis and Cummings denied Cutrer's request for a flex-time work schedule. *Id.* On October 24, 2016, Dr. Ward faxed, this time to Cutrer, a modified work release recanting the original eight-hour workday recommendation and recommending four ten-hour workdays instead ("Second Work Release"). *Id.* at 38 (Ex. 8). Later the same day, Cutrer met with Cummings and Davis to reiterate her request for four ten-hour workdays. *Id.* at 37 (Ex. 7). Cummings and Davis relayed Cutrer's request to Workforce Solutions Assistant Director Jill Navarrete ("Navarrete"), who denied the request. *Id.* at 130-31 (Ex. 48)

On or about November 14, 2016, Davis instructed Cutrer to move broken office chairs, with the help of a co-worker, from the Workforce Solutions headquarters to the breakroom by close of business the next day. *Id.* at 39-41 (Ex. 9), 138 (Ex. 49). Cutrer did not coordinate with her co-worker as Davis had requested and did not complete the assignment. *Id.* at 42 (Ex. 10), 43-44 (Ex. 11). Two days later, Davis took disciplinary action by sending a written counseling statement to Cutrer, which she signed without comment. *Id.* at 43-44 (Ex. 11). At the end of December, Davis relocated Cutrer's workstation to a cubicle, allegedly in retaliation for the failure to complete the November 14 assignment, and Dr. Ward faxed another work release to Defendant, recommending for Cutrer no pushing, pulling, lifting, nor standing or sitting for long periods ("Third Work Release"). *Id.* at 49 (Ex. 15).

Beginning in January 2017, Davis observed what she believed to be a continued decline in Cutrer's job performance. For example, on January 9, 2017, Cutrer informed Davis that she had a doctor's appointment scheduled for that morning and would not be at work. *Id.* at 50 (Ex. 16), 139

(Ex. 49). Davis verified with Cutrer that she had arranged movers as Davis had requested, and Cutrer responded that "Yes. Everything is set to go." *Id.* Two hours later, she informed Davis that she would not return to work until a follow-up doctor's appointment on January 12, 2017. *Id.* at 139-40 (Ex. 49). Davis again asked if the movers were scheduled, and Cutrer confirmed. *Id.* The next morning, the movers did not arrive, and the moving company informed Davis that Cutrer had never confirmed the date. *Id.* That same day, Davis learned that Cutrer had failed to fill a supply requisition for printer toner cartridges and other supplies requested in December 2016. *Id.* at 55 (Ex. 20). Soon thereafter, Davis recommended to Cummings and Navarrete that Cutrer be discharged. *Id.* at 56 (Ex. 21).

Navarrete agreed with Davis's recommendation and requested approval to terminate Cutrer from the Executive Director. *Id.* at 131 (Ex. 48). On January 23, 2020, Navarrete received the Executive Director's approval to meet with counsel and initiate Cutrer's termination. *Id.* The next day, Cutrer filed a charge of discrimination concurrently with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission ("TWC"). *Id.* at 58 (Ex. 23), 59-60 (Ex. 24); Pl.'s App. Ex. 1 ("First Charge"). The First Charge alleged Defendant had failed to make a reasonable accommodation relating to the physical work restrictions that Dr. Ward imposed in his work releases by issuing disciplinary action against Cutrer for failing to follow Davis's directive to move broken office chairs. Def.'s App. 59-60 (Ex. 24). Specifically, Cutrer alleged

> On November 18, 2016, I was denied reasonable accommodation due to my disability by Management [sic].
>
> Respondent's Reason for Adverse Action:
>      On November 18, 2016, Kristi Davis, IT/Facility Unit Director and Tracy [sic] Cumming, Workforce System Manager, presented me with an Employee Counseling Statement that required me to do activities that affect my reasonable accommodation request.

4

Pl.'s App. Ex. 1. The EEOC notified Defendant and began its investigation. Def.'s App. 58-59 (Exs. 23, 24). Sixteen months later, and two months after Cutrer filed this lawsuit, the EEOC issued Cutrer a right-to-sue letter regarding the First Charge ("Second Right-to-Sue Letter"). Pl.'s App. Ex. 13.

In response to the First Charge with the EEOC, Defendant decided not to risk suit or the appearance of retaliation by terminating Cutrer. Def.'s App. 131 (Ex. 48). Instead, over the next four months, it sought to part ways harmoniously with Cutrer. *Id.* But from January to April, the parties were unable to reach a resolution, and Defendant continued to notice Cutrer's declining job performance. *Id.* In February, Cutrer submitted a revised work release from Dr. Ward with increased physical limitations and recommendations to provide a variety of ergonomic accommodations ("Fourth Work Release"). *Id.* at 68 (Ex. 29). And in the weeks following, Cutrer missed work regularly for both pain and sickness without a doctor's note and occasionally without notifying Davis. *Id.* at 66-67 (Ex. 28), 69 (Ex. 30), 70-73 (Ex. 31), 77-78 (Ex. 33).

On April 13, 2017, Cutrer entered into a written settlement agreement with Defendant. *Id.* at 80-89 (Ex. 35). On April 15, 2017, Defendant advised Cutrer that it would not pay her according to the settlement agreement until Cutrer secured a release of lien from the Center for Medicare and Medicaid Services ("CMS"). Pl.'s App. Ex. 3. Two days later, in accordance with a seven-day revocation period within the settlement agreement, Cutrer exercised her option to rescind the settlement. Def.'s App. 90 (Ex. 36); Pl.'s App. Ex. 4. Another two days later, Defendant terminated Cutrer's employment due to "performance issues." Pl.'s App. Exs. 5, 6.[4]

On May 17, 2017, Cutrer's attorney mailed a signed complaint to the TWC alleging that Cutrer had been discharged in retaliation "[w]hen [she] would not agree to settlement." Def.'s

---

[4] Cutrer maintains that this termination was *retroactive*. Pl.'s Resp. 4 (citing Pl.'s App. Ex. 6).

App. 92-96 (Ex. 38); Pl.'s App. Ex. 7. On August 28, 2017, the TWC recused itself to avoid a conflict of interest, notified Cutrer and her attorney, referred the matter to the EEOC, and declined to issue a right-to-sue letter. Def.'s App. 97 (Ex. 39); Pl.'s App. Ex. 8 ("[t]he TWCCRD has dismissed your complaint and considers your case closed."), Ex. 9. The EEOC drafted a proposed Charge of Discrimination on October 6, 2017 ("Second Charge"), and mailed the proposed Second Charge to Cutrer's counsel with requests that Cutrer sign and return it for verification or risk dismissal. Def.'s App. 98-109 (Ex. 40), 110 (Ex. 41); Pl.'s App. Ex. 10. Ten days later, the EEOC notified Workforce Solutions of the proposed Second Charge, stating that no action was required at the time and "a perfected charge (EEOC Form 5) will be mailed to [Defendant] once it has been received from the Charging Party." Def.'s App. 111 (Ex. 42). On November 21, 2017, the EEOC dismissed the Second Charge allegations and issued a right-to-sue letter for the Second Charge ("First Right-to-Sue Letter"). *Id.* at 110 (Ex. 41), 113 (Ex. 44).[5]

On February 24, 2018, Cutrer filed this disability discrimination lawsuit alleging violations of the ADA. Compl. 1, ECF No. 1. Cutrer raised four claims—three under the ADA: (1) a reasonable accommodation claim, (2) a first retaliation claim during her employment, (3) a second postemployment retaliation claim for her termination, and (4) a claim for violation of the FCRA under 15 U.S.C. § 1681. *Id.* at 9-13. Cutrer seeks economic damages including back pay, reinstatement or front pay, compensatory damages, actual damages including out-of-pocket losses,

---

[5] There is a dispute of fact over whether Cutrer signed and returned the second EEOC Charge Form. Defendant maintains that the complaint was signed but was not signed under oath as required under statute. Following an August 14, 2020, hearing, the Court issued an order withdrawing any matters previously considered to be deemed admissions under Federal Rule of Civil Procedure 36(a)(3), including the ones upon which Defendant relies here. Order, ECF No. 60. In Cutrer's response, she asserts that on or about October 20, 2017, she signed the second EEOC Charge Form and returned it to the EEOC via U.S. Mail. As evidence thereof, Cutrer has included an affidavit from her counsel. Pl.'s Resp. App. Ex. 6. The Court need not consider the effect, if any, of Cutrer's counsel's affidavit given the Court's determination that equitable tolling applies to her second retaliation claim. *See infra* III(D)(1).

pre-judgment and post-judgment interest, attorneys' fees, and costs of suit. *Id.* at 13-14. As previously noted, the Court has dismissed Plaintiff's FCRA claim. On June 26, 2020, Defendants filed this Motion for Summary Judgment (ECF No. 37), seeking dismissal of Cutrer's remaining claims under the ADA for failure to exhaust her administrative remedies. The motion is now ripe for consideration.

## II.   LEGAL STANDARD

### A.  Motion for Summary Judgment

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-

movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

### B.  Equitable Tolling

The "limitations period on filing a charge of employment discrimination is subject to equitable doctrines such as tolling or estoppel." *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 380 (5th Cir. 2019) (citing *Manning v. Chevron Chemical Co.*, 332 F.3d 874, 880 (5th Cir. 2003)). The plaintiff "bears the burden of demonstrating the basis for tolling the limitations period." *Id.* (citing *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995)). Equitable tolling can excuse an untimely filing of an EEOC complaint when "(1) the pendency of a suit between the same parties [is] in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim [is] because of the defendant's intentional concealment of them; and (3) the EEOC[] mislead[s] the plaintiff about the nature of her rights." *Id.* (internal quotation marks omitted).

### C.  Exhaustion of Administrative Remedies

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); *accord Bailey v. Dallas Cty. Sch.*, 2016 WL 7638146, at 2 (N.D. Tex. Dec. 9, 2016), *rep. and recomm. adopted*, 2017 WL 57836 (N.D. Tex. Jan. 4, 2017). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor*, 296 F.3d at 379 (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996)); *see*

*also Davis v. Fort Bend Cty.*, 893 F.3d 300, 306–07 (5th Cir. 2018), *aff'd*, 139 S. Ct. 1843 (2019). "The EEOC charge must raise a discrimination claim with specificity." *Carter v. RMH Teleservices, Inc.*, 2005 WL 2086036, at *4 (W.D. Tex. August 10, 2005) (citing *Teffera v. N. Tex. Tollway Auth.*, 121 F. App'x 18, 21 (5th Cir. 2004), *aff'd*, 205 F. App'x 214 (5th Cir. 2006)). But courts must not strictly construe the EEOC charges and require the complainants to allege every instance of discrimination. *See Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). "A plaintiff fails to exhaust administrative remedies if her claim is not in the charge or scope of its subsequent investigation." *Armstrong v. Bank of Am. N.A.*, 2010 WL 11618878, at *4 (N.D. Tex. Dec. 9, 2010); *see also Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006) ("[A] primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims.").

## III.    ANALYSIS

Defendant argues, for all three of Cutrer's claims, that "[she] has failed to exhaust the mandatory administrative perquisites under Title VII of the Civil Rights Act of 1964 . . .." Mot. for Summ. J. 2, ECF No. 38. Cutrer disagrees, arguing (1) that waiver or equitable tolling excused her from exhausting, or alternatively actually exhausted, her administrative remedies for her failure-to-accommodate claim, Pl.'s Resp 8-11, ECF No. 64; (2) that waiver or equitable tolling excused her from exhausting her administrative remedies for her first retaliation claim, *id.* at 16; and (3) that waiver or equitable tolling excused her from exhausting, or alternatively actually exhausted, her administrative remedies for her second retaliation claim, *id.* at 16. Prior to addressing the merits of Defendant's failure-to-exhaust arguments, the Court turns to Cutrer's argument that the doctrine of waiver or equitable estoppel prevents Defendant from raising its administrative exhaustion arguments at this stage.

### A.  Judicial Estoppel Does Not Apply

Cutrer argues that the doctrine of waiver or equitable estoppel prevents Defendant from raising its administrative exhaustion arguments at this stage. *See* Pl.'s Resp. 8-9, ECF No. 64. In a related argument, Cutrer contends that Defendant forfeited its exhaustion argument by failing to raise it in a timely manner. *Id.* at 13 (citing *Davis v. Fort Bend Cty.*, 893 F.3d 300, 308 (5th Cir. 2018)). Both Cutrer's waiver and forfeit arguments are premised on the doctrine of judicial estoppel. For the following reasons, the Court rejects Cutrer's argument that Defendant is judicially estopped from raising its summary judgment arguments at this juncture.

Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (citing *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996)). Judicial estoppel applies when "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011).

Here, Cutrer does not explain why or how Defendant's original state sovereign immunity ground for dismissal is plainly inconsistent with its failure-to-exhaust defense, other than citing the Fifth Circuit's earlier opinion in this case. *See generally Cutrer*, 943 F.3d 265 (addressing only Defendant's state sovereign immunity defense). On appeal, Defendant did not take an inconsistent position on its failure-to-exhaust defense because the appeal addressed the sole issue of Defendant's state sovereign immunity defense and because Defendant did not raise its failure-to-exhaust defense until after the appeal. *See id.*; Answer 16-17, ECF No. 35. Even had Defendant

taken a plainly inconsistent position on appeal, the Fifth Circuit expressly rejected Defendant's position. *See Cutrer*, 943 F.3d at 272; *see also Hall*, 327 F.3d at 396

An interlocutory appeal ruling on a distinct affirmative defense does not preclude Defendant from ever raising another affirmative defense or from requesting dismissal on different grounds. *See Hall*, 327 F.3d at 396; *see also Ahrens v. Perot Systems Corp.*, 205 F.3d 831 (5th Cir. 2000). In short, Defendant's exhaustion arguments, raised in its Answer and invoked now in its Motion for Summary Judgment, are timely and not plainly inconsistent with its initial state sovereign immunity defense. *See* Mot. for Summ. J, ECF No. 37. Accordingly, the Court declines to invoke judicial estoppel.

### B. Cutrer's Failure-to-Accommodate Claim

Defendant contends that Cutrer failed to exhaust her administrative remedies for her failure-to-accommodate claim because the claim is based on "an anxiety disorder" outside the scope of the First Charge. Mot. for Summ. J. 27, ECF No. 38 (citing Compl. ¶¶ 25, 30, 35-40, 69, ECF No. 1). In Cutrer's response, she maintains that the doctrine of equitable tolling excused her from exhausting administrative remedies as to this claim, and alternatively the Second Right-to-Sue letter (applying to her First Charge) exhausted her administrative remedies. Pl.'s Resp. 11-15, ECF No. 64. In reply, Defendant argues that Cutrer effectively conceded that she failed to exhaust her administrative remedies, and that her assertions of waiver and equitable tolling are of no moment. Def.'s Reply 16-22, ECF No. 67. The Court first addresses whether equitable tolling is appropriate for this claim, and if not, whether Cutrer actually exhausted her administrative remedies.

### 1. *Equitable Tolling*

Cutrer argues that, because the Fifth Circuit has recognized that equitable tolling *may* apply to waive the EEOC administrative exhaustion requirement, the Court *must* apply the equitable tolling doctrine in this case. *See* Pl.'s Resp. 12, ECF No. 64 (citing *Pinkard v. Pullman Standard*, 678 F.2d 1211, 1217 (5th Cir. 1982)) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Neither *Pinkard* nor *Zipes* address why the Court here must modify the scope of the First Charge or ignore the statutory requirement to exhaust administrative remedies for employment discrimination claims before bringing the claim in federal court. *See* 42 U.S.C. § 2000e–5(f)(1). Allowing for equitable tolling here would actually undermine the purpose of the filing requirement because Defendant could not have had prompt notice of the anxiety disorder claim based on the factual statement of the First Charge alone. *See Zipes*, 455 U.S. at 398 (the goal of equitable tolling is to "honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer."); *see also infra* Part III(B)(2).

Cutrer "bears the burden of demonstrating the basis for tolling the limitations period." *Melgar*, 931 F.3d at 380 (citing *Wilson*, 65 F.3d at 404). Cutrer has failed meet that burden. *See id.* (listing the limited circumstances in which equitable tolling is proper in an employment discrimination suit). Thus, the Court declines to impose the doctrine of equitable tolling to waive Cutrer's exhaustion requirement for her failure-to-accommodate claim. Accordingly, the Court turns to whether Cutrer actually exhausted her administrative remedies as to the claim.

### 2. *Exhaustion of Administrative Remedies*

Cutrer argues that the Second Right-to-Sue Letter exhausted her administrative remedies for her failure-to-accommodate claim. Pl.'s Resp. 11, ECF No. 64. But even when an aggrieved

employee files a timely charge and receives a right-to-sue notice, the scope of any subsequent lawsuit "is limited to the scope of the EEOC investigation that can reasonably be expected to grow out of the charge." *Carter*, 2005 WL 2086036 at *4. To determine whether a claim is within the scope of the reasonable EEOC investigation, the Court must look to the factual statements in the EEOC charge.[6] *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) ("the crucial element of a charge of discrimination is the factual statement contained [in the EEOC charge].").

In this case, Cutrer's First Charge was limited to a single failure-to-accommodate allegation arising from Davis's November 18, 2016, disciplinary action. *See* Pl.'s App. Ex. 5, ECF No. 65; Def.'s App. 39-41 (Ex. 9), 42 (Ex. 10), 43-44 (Ex. 11), 138 (Ex. 49), ECF No. 39; *compare with* Compl. ¶¶ 25, 30, 35-40, 69, ECF No. 1 (alleging that, because Cutrer's workspace was relocated from a windowed exterior office to a windowless interior cubicle, Defendant ignored her reasonable accommodation for "an anxiety disorder."). In her First Charge, Cutrer claimed that Davis's directive to move broken chairs "affected" her "reasonable accommodation request" arising from Dr. Ward's First, Second, and Third Work Releases in violation of the ADA. *See* Pl.'s App. Ex. 5, ECF No. 65. She makes no mention of an anxiety disorder, nor does she note the office relocation as a source of the alleged discrimination. *See* Pl.'s App. Exs. 1, 12, ECF No. 65. The anxiety disorder now alleged is outside the scope of the physical limitations raised in the First Charge. *See, e.g., Henderson v. NY Life, Inc.*, 991 F. Supp. 527, 542 (N.D. Tex. 1997) (finding that filing a charge over an "air vent accommodation" based on plaintiff's sinusitis did not exhaust

---

[6] Under certain circumstances, a court may look at documentation supporting the charge, such as the EEOC questionnaire. *See Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *3–6 (N.D. Tex. June 9, 2004). Here, neither party provided any relevant documentation supporting the First Charge, so the Court is limited to the factual statements in the First Charge.

remedies regarding a "work-from-home" accommodation claim based on an immune deficiency disorder alleged in his complaint).

The context of the First Charge further supports the Court's conclusion. None of Dr. Ward's three work releases for Cutrer, issued before the First Charge and cited in the First Charge, references an anxiety disorder or associated accommodation recommendations. *See* Def.'s App. 38 (Ex. 8), 49 (Ex. 15), 59 (Ex. 24). At neither meeting with her supervisors did Cutrer raise an issue of an anxiety disorder or request accommodations associated with an anxiety disorder; her own meeting notes support this conclusion. *Id.* at 34-36 (Ex. 6), 37 (Ex. 7), 136-37 (Ex. 49), 143-44 (Ex. 50). Because Cutrer failed to exhaust her administrative remedies as to her failure-to-accommodate claim, Defendant's motion for summary judgment should be granted as to this claim.[7] *See, e.g., Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 842 (E.D. Tex. 2014), *aff'd*, 640 F. App'x 393 (5th Cir. 2016). Accordingly, Cutrer's failure-to-accommodate claim should be dismissed without prejudice for failure to exhaust administrative remedies.

### C.  Cutrer's First Retaliation Claim

Defendant contends that Cutrer failed to exhaust her administrative remedies for her first retaliation claim because the claim is a retaliation claim outside the scope of the failure-to-accommodate claim in the First Charge. Mot. for Summ. J. 27, ECF No. 38 (citing Compl. ¶¶ 43-46, ECF No. 1). In response, Cutrer again relies on the doctrine of equitable tolling and does not address whether she failed to actually exhaust her administrative remedies as to this *claim*. Pl.'s Resp. 16, ECF No. 64. In reply, Defendant maintains that Cutrer effectively conceded that she failed to exhaust her administrative remedies and that her assertions of waiver and equitable tolling

---

[7] For the same reasons, the Court rejects Cutrer's alternative argument that exhausting her administrative remedies regarding the Second Charge incorporated the First Charge and, therefore, satisfied the exhaustion requirement for the failure-to-accommodate claim.

14

are of no moment. Def.'s Reply 16-22, ECF No. 67. The Court first addresses whether equitable tolling is appropriate for this claim, and if not, whether Cutrer actually exhausted her administrative remedies.

### 1. Equitable Tolling

Cutrer argues that, because the Fifth Circuit has recognized that equitable tolling *may* apply to waive the EEOC administrative exhaustion requirement, the Court *must* apply the equitable tolling doctrine in this case. *See* Pl.'s Resp. 8, 12, ECF No. 64 (citing *Pinkard*, 678 F.2d at 1217) (citing *Zipes*, 455 U.S. at 393). Neither *Pinkard* nor *Zipes* address why the Court here must equitably modify the First Charge to capture her retaliation claim or ignore the statutory requirement to exhaust administrative remedies for employment discrimination claims before bringing the claim in federal court. 42 U.S.C. § 2000e–5(f)(1); *see, e.g., Carroll v. Sanderson Farms, Inc.*, 2012 WL 3866886 at *22 (S.D. Tex. Sept. 5, 2012) ("[W]here the retaliation occurred *before* the plaintiff filed her EEOC charge, she must exhaust her administrative remedies by including the retaliation claim in her initial charge." (emphasis in original)).

Cutrer "bears the burden of demonstrating the basis for tolling the limitations period." *Melgar*, 931 F.3d at 380 (citing *Wilson*, 65 F.3d at 404). Cutrer has failed meet that burden. *See id.* (listing the limited circumstances in which equitable tolling is proper in an employment discrimination suit). Thus, the Court declines to impose the doctrine of equitable tolling to waive Cutrer's exhaustion requirement for her first retaliation claim. Accordingly, the Court turns to whether Cutrer actually exhausted her administrative remedies as to that claim.

### 2. Exhaustion of Administrative Remedies

Cutrer does not argue that she actually exhausted her administrative remedies for her first retaliation claim, but even had she preserved the argument, the Second Right-to-Sue Letter did not

exhaust Cutrer's administrative remedies for her first retaliation. *See* Pl.'s App. Ex. 13. Even when an aggrieved employee files a timely charge and receives a right-to-sue notice, the scope of any subsequent lawsuit "is limited to the scope of the EEOC investigation that can reasonably be expected to grow out of the charge." *Carter*, 2005 WL 2086036 at *4. "[W]here the retaliation occurred *before* the plaintiff filed her EEOC charge, she must exhaust her administrative remedies by including the retaliation claim in her initial charge." *Carroll*, 2012 WL 3866886 at *22 (citing *Eberle v. Gonzales*, 240 F. App'x 622, 628 (5th Cir. 2007)).[8]

In this case, Cutrer's First Charge was limited to a single failure-to-accommodate allegation arising from Davis's November 18, 2016, disciplinary action. *See* Pl.'s App. Ex. 5, ECF No. 65; Def.'s App. 39-41 (Ex. 9), 42 (Ex. 10), 43-44 (Ex. 11), 138 (Ex. 49), ECF No. 39; *compare with* Compl. ¶¶ 9, 40, 71-83, ECF No. 1. In her First Charge, Cutrer claimed that Davis's directive to move broken chairs "affected [her] reasonable accommodation request" arising from Dr. Ward's First, Second, and Third Work Releases in violation of the ADA. *See* Pl.'s App. Ex. 5, ECF No. 65. The "retaliation" box on the First Charge was not checked. *Id.* The scope of the First Charge alleged that the discrimination was limited to October 1 to November 18, 2016. *See id.* at Ex. 5, ECF No. 65 ("Date(s) of Discrimination Took Place / Earliest 10-01-2016 / Latest 11-18-2016"). The allegedly retaliatory actions in December 2016 and January 2017 occurred *before* Cutrer filed her First Charge on January 24, 2017. *See* Pl.'s App. Ex. 5, ECF No. 65; *see also* Compl. ¶ 40,

---

[8] This present case is distinct from the exception embodied in *Gupta v. East Texas State Univ.*, 654 F.2d 411, 413-14 (5th Cir.1981). In *Gupta,* the plaintiff filed an EEOC charge alleging national origin and religious discrimination. *Id.* at 413. He later sued for the alleged discrimination, and in that lawsuit he also claimed that after he filed the EEOC charge, his employer retaliated against him; however, the plaintiff had not filed an additional EEOC charge alleging retaliation. *Id.* The Fifth Circuit held that it was not necessary to file a charge for a retaliation claim when that claim grows out of a previously filed EEOC charge. *Id.* at 414. The situation in *Gupta* is distinguishable from this case and in *Carroll* because the retaliation claim does not grow out of a previously filed EEOC charge. The alleged retaliation about which she complains occurred before she ever went to the EEOC. Thus, the *Gupta* rule does not apply.

ECF No. 1 ("In December 2016, Ms. Navarrete published the new seating chart which called for Ms. Cutrer to sit in a cubicle.").[9]

The Court concludes that Cutrer has waived her argument that she exhausted her administrative remedies for her first retaliation claim. *See, e.g., Blackwell v. Laque*, 275 F. App'x 363, 367 n.3 (5th Cir. 2008). Even had she preserved the argument, Cutrer has not raised a genuine dispute of material fact sufficient to defeat Defendant's motion for summary judgment based on her failure to exhaust her administrative remedies as to her first retaliation claim.[10] *See, e.g., Eberle*, 240 F. App'x at 628 (declining to extend the *Gupta* exception, which usually allows a plaintiff to proceed in district court on an unexhausted retaliation claim, because its rationale is not applicable when the retaliation occurs before the filing of the EEOC charge). Because Cutrer failed to exhaust her administrative remedies as to her first retaliation claim, Defendant's motion for summary judgment should be granted as to this claim. *See, e.g., Brooks*, 70 F. Supp. 3d at 84. Accordingly, Cutrer's first retaliation claim should be dismissed without prejudice for failure to exhaust administrative remedies.[11]

### D.  Cutrer's Second Retaliation Claim

Defendant contends that summary judgment is proper because Cutrer failed to exhaust her administrative remedies as to her second retaliation claim. Mot. for Summ. J. 35-36, ECF No. 38.

---

[9] The Court declines to accept Cutrer's allegation as true because she does not provide any summary judgment evidence to support it. But even if the allegation is accepted as true, the first instance of retaliation falls outside the date range of the First Charge.

[10] For the same reasons, the Court rejects Cutrer's alternative argument that exhausting her administrative remedies regarding the Second Charge incorporated the First Charge and, therefore, satisfied the exhaustion requirement for the failure-to-accommodate claim.

[11] The Court rejects Cutrer's alternative argument that her Second Charge exhausted her administrative remedies as to her first retaliation claim. Cutrer's Second Charge was limited to a post-employment retaliation claim based solely on her termination for rescinding the settlement agreement. The termination cannot be both retaliation during her employment and retaliation after her employment. She alleged and still maintains only the latter.

Specifically, Defendant argues that Cutrer never verified the Second Charge with the EEOC, so it did not constitute a valid charge, required to exhaust administrative remedies. *Id.* at 39-40 (citing Def.'s App. 96 (Ex. 38)) (citing *Vason v. City of Montgomery, Ala.*, 240 F.3d 905, 907 (11th Cir. 2001)). In response, Cutrer argues that (1) equitable tolling is again appropriate, Pl.'s Resp. 16-24 (citing *Zipes*, 455 U.S. at 1132-34), and (2) she actually exhausted her administrative remedies by signing the EEOC Charge Form and returning it to the EEOC via U.S. Mail. *Id.* at 25 (citing Pl.'s App. Ex 11). The Court first addresses whether equitable tolling is appropriate for this claim, and if not, whether Cutrer actually exhausted her administrative remedies.

### 1. *Equitable Tolling*

Defendant correctly contends that a verified EEOC charge is required to exhaust administrative remedies in employment discrimination suits. Mot. for Summ. J. 37-41; *see, e.g., Butler v. Greif, Inc.*, 325 F. App'x 748, 749 (11th Cir. 2009) ("Where a right to sue letter has issued, the plaintiff has brought suit, and the EEOC has closed its file, there is no longer a charge pending before the EEOC that is capable of being verified."). Cutrer argues that, regardless of the usual requirement, the doctrine of equitable tolling excused her from exhausting administrative remedies—including the need to file a verified EEOC charge—for her second retaliation claim. *See* Pl.'s Resp. 8, 16-22, ECF No. 64.[12]

Cutrer "bears the burden of demonstrating the basis for tolling the limitations period." *Melgar*, 931 F.3d at 380 (citing *Wilson*, 65 F.3d at 404). Equitable tolling can excuse an untimely filing of an EEOC complaint when "the EEOC[] mislead[s] the plaintiff about the nature of her

---

[12] The Court notes Cutrer's copying of nearly three full pages of a Fifth Circuit opinion without citation to that opinion to make her point. *See* Pl.'s Resp. 16-22; *compare with Davis*, 893 F.3d at 303-06. The Court reminds counsel of a key tenet of the Texas Lawyer's Creed: "I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage." *See* Part IV(6).

rights." *Id.* at 380 (internal quotation marks omitted). Based on the record and viewing all evidence in the light most favorable to Cutrer, the Court concludes that the EEOC misled Cutrer about the nature of her rights, and equitable tolling is appropriate.

Here, The EEOC represented to Cutrer that her TWC complaint was sufficient for a charge of discrimination and that it would only need her signature on the draft Second Charge to proceed with an investigation. Def.'s App. 98-109 (Ex. 40) ("The Attached EEOC Form 5, Charge of Discrimination, was drafted based on the information provided. Because the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge. Before we investigate your charge, however, you must sign and return the enclosed Form # 5 Charge of discrimination."). In the same document, the EEOC gave Cutrer the option not to sign the form and, instead, have the charge dismissed with a right-to-sue letter "allowing [Cutrer] to pursue the matter in federal court." *Id.* ("Under EEOC procedures, if we do not hear from you within 30 days, or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue you a right to sue letter allowing you to pursue the matter in federal court."). After the thirty days expired, the EEOC exercised its apparent authority to dismiss Cutrer's charge and issued her the First Right-to-Sue Letter. *Id.* at 113 (Ex. 44); s*ee also Manning*, 332 F.3d at 881 (applying equitable tolling "when an employee seeks information from the EEOC, and the organization gives the individual *incorrect information* that leads the individual to file an untimely charge.").

Cutrer maintains that the purpose of the filing requirement is satisfied for this claim. Pl.'s Resp. 16-18 (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006) ("a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims.")). The Court agrees

19

because Defendant received actual notice from the EEOC of the Second Charge. *See* Def.'s App. 111 (Ex. 42). The Court need not decide whether an EEOC verified charge was a condition precedent to suit in this case, because the EEOC expressly led Cutrer to believe that she had exhausted her administrative remedies and could file suit. "[C]ourts construing Title VII have been extremely reluctant to allow procedural technicalities to bar claims brought under the Act . . . and have, with virtual unanimity, resolved them in favor of the complaining party[.]" *See Sanchez*, 431 F.2d at 460–61 & 460 n.1; *accord Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1571 (11th Cir. 1996) ("any deficiency in the EEOC's performance of its duties should not adversely affect a plaintiff's right to sue"); *see also Fed. Ex. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (*"*An unsworn document submitted to the EEOC may constitute a "charge" if it otherwise meets the technical requirements for a charge and if it can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."). Accordingly, the Court concludes that, because the EEOC misled Cutrer about the nature of her right to sue, equitable tolling serves to waive the requirement to exhaust administrative remedies for her second retaliation claim embodied in the Second Charge. Thus, the Court need not address whether Cutrer actually exhausted her administrative remedies as to her second retaliation claim.

The Court rejects Defendant's argument that "[Cutrer]'s failure to cooperate with the EEOC precludes any equitable waiver of the verification requirement[.]" Mot. for Summ. J. 41, ECF No. 38 (citing *Butler*, 325 F. App'x at 749 (citing *Forehand*, 89 F.3d at 1570)). Defendant presents no evidence that Cutrer "attempte[ed] to frustrate the investigation or conciliation by the EEOC[.]" *See Forehand*, 89 F.3d at 1570 ("if a claimant attempts to frustrate investigation or conciliation by the EEOC, equitable modification of the exhaustion rule may be inappropriate.").

Cutrer instead followed the instructions in the EEOC's letter precisely to acquire a right-to-sue letter on her Second Charge; she should not be held accountable for the EEOC's lapse and creation of a procedural technicality. Thus, the Court finds equitable tolling of Cutrer's administrative remedies proper for her second retaliation claim. Accordingly, the Court will deny Defendant's motion for summary judgment as to Cutrer's second retaliation claim, and the claim may proceed.

## IV.    CONCLUSION

Based on the foregoing, the Court finds (1) that Cutrer has failed to exhaust her administrative remedies for her failure-to-accommodate claim and first retaliation claim, and (2) that Cutrer's administrative remedies for her second retaliation claim should be equitably tolled. Based on the reasoning above, the Court finds that Defendant Workforce Solutions's Motion for Summary Judgment (ECF No. 37) should be and is hereby **GRANTED in part** and **DENIED in part**.

The Court **GRANTS** the motion as to Cutrer's failure-to-accommodate claim and first retaliation claim, and these claims are hereby **DISMISSED without prejudice** for failure to exhaust administrative remedies. The Court **DENIES** the motion as to Cutrer's second retaliation claim, which may proceed. While the Court has resolved those portions of Defendant's motion for summary judgment related to exhaustion and equitable tolling, the Court does not reach the merits of Cutrer's second retaliation claim given that Cutrer's response is limited to exhaustion and equitable tolling. *See* Notice of Filing Affidavit Regarding Plaintiff's Health (ECF No. 66) (Cutrer's shoulder surgery and recovery has limited her ability to participate in the case).

According to Cutrer's Notice of Filing Affidavit Regarding Plaintiff's Health (ECF No. 66), filed August 29, 2020, Cutrer's medical condition would stabilize "within a few weeks from [the end of August]." Accordingly, the Court **LIFTS** the stay issued on September 14, 2020. Order,

ECF No. 85. The Court **ORDERS** Cutrer to file a response to Defendant's Motion for Summary Judgment (ECF No. 37) addressing the merits of her second retaliation claim, her sole remaining cause of action, on or before **October 16, 2020**. The Court further **ORDERS** Defendant to reply on or before **October 23, 2020**. Cutrer's Motion to Strike Deemed Admissions (ECF No. 45), Cutrer's Motion to Stay or in the Alternative Motion to Amend Scheduling Order (ECF No. 54), Defendant's Motion to Compel (ECF No. 61), Cutrer's Motion to Modify Scheduling Order (ECF No. 70), and Cutrer's Motion to Quash and for Protective Order (ECF No. 75) are **DENIED as moot**.

     **SO ORDERED** on this **2nd day** of **October, 2020**

Reed O'Connor<br>
UNITED STATES DISTRICT JUDGE